IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Christine M. Arguello

Civil Action No. 21-cv-02908-CMA-MDB

PERLA OLAVE, and
JAMIE DARCI OLAVE-HERNANDEZ,

      Plaintiffs,

v.

AMERICAN FAMILY MUTUAL INSURANCE COMPANY, S.I.,

      Defendant.

---

**ORDER GRANTING IN PART AND RESERVING RULING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND ORDERING SUPPLEMENTAL BRIEFING**

---

This matter is before the Court on Defendant American Family Mutual Insurance Company, S.I.'s ("American Family") Motion for Summary Judgment. (Doc. # 55.) For the following reasons, the Court grants in part and denies in part the Motion.

      **I.**      **BACKGROUND**

The following material facts are undisputed. (Doc. # 55 at 3–11; Doc. # 59 at 3–4.)[1] This is an insurance coverage case. Plaintiff Perla Olave is the sole owner of a

---

[1] The Court notes that Plaintiffs explicitly objected to only five of the fifty-eight paragraphs contained in Defendant's Statement of Undisputed Material Facts ("UMFs"). (Doc. # 55 at 3–11; Doc. # 59 at 3–4.) At the conclusion of their response to Defendant's UMFs, Plaintiffs state that "Defendant presents numerous statements taken out of context and statements that Plaintiff disputes either the factual basis or the implied meaning of as 'Undisputed Material Facts.'" (Doc. # 59 at 4.) However, the Court's practice standards require that opposing parties "admit or deny the movant's asserted material facts . . . in separate correspondingly numbered paragraphs," and that "[a]ny denial be accompanied by a brief factual explanation for the reason(s) for the

home located on Garfield Street in Thornton, Colorado (the "Property.") (Doc. # 5 at ¶ 7.) On December 19, 2016, Ms. Olave applied for a Homeowner's Policy (the "Policy") with American Family. (Doc. # 55-1 at 68–76.) In her application, Ms. Olave indicated that she and her child would be the only occupants of the Property, it was her primary residence, and the property would be owner occupied. (*Id.* at 68–70.) The Policy contains the following notice requirement:

> Change in Ownership, Occupancy, or Risk.
> **You**[2] must notify **us** in writing within 30 days from the date of any change in ownership, occupany, or risk first begins.
> This includes but is not limited to the **residence premises** being:
> a. used for any other purpose than **your** residence;
> b. leased or rented to others;
> c. the subject of any foreclosure process; or
> d. **uninhabited**.

(*Id.* at 44.) The Policy includes the following definition of "uninhabited":

> **you** do not reside at, have moved from, or vacated **your** dwelling on **the residence premises**. This definition does not change regardless of the presence of any personal property that may be on the **residence premises**. Uninhabited does not mean those instances in which:
> a. …
> b. **you** are temporarily residing away from **your** dwelling on the **residence premises** due to:
>    (1) work related travel;
>    (2) a vacation; or
>    (3) use of a seasonal home.

(*Id.* at 33.) Finally, the General Conditions Section of the Policy states:

> Concealment Or Fraud

---

denial and a specific reference to material in the record supporting the denial." Civ. Practice Standard 7.1D(b)(4). Therefore, the Court will treat all facts to which Plaintiffs did not note a specific objection as undisputed.

[2] The Policy provides definitions for the words appearing in bold. (Doc. # 55-1 at 31–34.)

      a.   This policy was issued in reliance upon the information and warranties in **your** insurance application.
  **We** may void this policy from its inception if **you**:
  (1) concealed or misrepresented any material fact or circumstance; or
  (2) made false statements;
  in **your** application.

      b.   Coverage under Section I of this policy is not provided for any **insured**, if before or after a loss, any **insured** has:
  (1) concealed or misrepresented any material fact or circumstance;
  (2) presented any altered or falsified document or receipt;
  (3) engaged in fraudulent conduct; or
  (4) made false statements;
  relating to this insurance or any claim under this policy.

(*Id.* at 54.) The Policy was issued on December 29, 2016. (*Id*. at 76.)

Ms. Olave worked in Colorado for a collections business called Alliance until October 2017. (*Id.* at 104–07.) Ms. Olave moved to Missouri the following month. (*Id.* at 107.) In January 2018, Ms. Olave registered her own business with the Missouri Secretary of State and enrolled her daughter in school in Missouri. (*Id.* at 161, 170.) Between November 2017 and March 2018, "nobody was residing at the [Property,]" although Ms. Olave stated that she "would go back and forth just to check on the [Property]." (*Id.* at 108–10; 120–21.) Ms. Olave did not inform American Family of any changes in the status of the Property during this time. (*Id.* at 97–98.)

In March 2018, Plaintiff Jaime Darci Olave-Hernandez, Ms. Olave's brother, moved into the Property. (*Id.* at 118.) Later that year, Ms. Olave was featured in a blog post in which the author noted her "move to the St. Louis[, Missouri,] area was influenced by her commitment to ensur[ing] that her daughter grew up around extended family." (*Id.* at 184.) In September 2019, Ms. Olave registered to vote in Missouri. (*Id.* at 176.)

The Policy came up for renewal in December 2019. (*Id.* at 13–15.) At this time, Ms. Olave changed her mailing address to an address in Missouri. (Doc. # 5 at ¶ 20.) She also indicated that "she was going back and forth between Missouri for work and Colorado to the house . . . . [Further,] she kept insisting that that was still her house, but that her brother was staying with her, so it was never vacant when she was gone . . . ." (Doc. # 55-1 at 81–82, 93, 96–97.) These were the only changes she mentioned to American Family at this time. (*Id.* at 81–82.) An agent mentioned a businessowner's policy to Ms. Olave, but no changes were made to the type of policy covering the Property. (*Id.* at 82, 86–87.) According to the agent, this was because Ms. Olave "kept saying, you know, I'm just using this address in Missouri for work now and the home in Colorado is my primary residence." (*Id.* at 87.) However, Ms. Olave did not "travel back and forth from Colorado to Missouri . . . for work" in 2018 or 2019,[3] and in 2019 she spent more of her time in Missouri than in Colorado. (*Id.* at 114; *id.* at 162, Recorded Statement at 21:09–24:54, 26:25–27:03.) Ms. Olave did not travel to Colorado in 2020, in part because of the global coronavirus pandemic. (*Id.* at 162, Recorded Statement at 21:09–24:54, 26:25–27.)

On September 15, 2020, an electrical fire occurred at the Property. (Doc. # 5 at ¶ 8.) Ms. Olave was in Missouri when the fire occurred. (Doc. # 55-1 at 112–13.) As part of their investigation into the claim after the fire was reported, an American Family adjuster inspected the Property on October 2, 2020. (*Id.* at 136–43.) During this

---

[3] The Court notes that in response to American Family's First Set of Interrogatories, Ms. Olave indicated that during the years 2018 and 2019 she traveled to Colorado approximately seven times. (Doc. # 55-1 at 170.)

inspection, the adjuster photographed a "For Rent" sign in the garage and documented family photographs throughout the house which did not include Ms. Olave. (*Id.* at 142–43, 149–50.) In September 2020, Ms. Olave's public adjuster, Peter Ridulfo, represented that at the time of the fire there were 4 adults and 4 children living at the Property. (*Id.* at 194–95.) On November 4, 2020, American Family took a recorded statement of Ms. Olave with counsel present. (*Id.* at 162, Recorded Statement at 0:00–0:10.) During this statement, in addition to describing her travel back and forth between Colorado and Missouri as outlined above, Ms. Olave confirmed her Colorado driver's license had expired and her current license was issued by Missouri. (*Id.* at 2:20–3:38, 21:09–24:54, 26:25–27.)

On January 20, 2021, American Family issued a coverage position letter denying Ms. Olave's property damage claim because "the named insured, Perla Olave does not reside at the loss location." (Doc. # 55-1 at 202–06.) In response to requests for an inventory and documentation of damaged personal property owned by Ms. Olave, Mr. Ridulfo, represented that "everything at the [Property] is the property of [Ms. Olave] apart from her brother's clothes." (*Id.* at 199.) Ms. Olave consistently denied having purchase receipts but submitted an affidavit asserting she owned items listed in two previously submitted catalogs of personal property damaged in the fire. (*Id.* at 225, 229.) Finally, at an October 17, 2022, deposition, Mr. Hernandez-Olave testified that multiple items at the Property, including the office furniture, computer, exercise equipment, a television, and a dresser, belonged to him. (*Id.* at 122–25.)

5

Ms. Olave and Mr. Olave-Hernandez (collectively "Plaintiffs"), initiated this action against American Family in Colorado state court on September 27, 2021, alleging one count for each plaintiff of: (1) breach of contract, (2) common law bad faith breach of insurance contract, and (3) statutory unreasonable delay or denial of benefits pursuant to Colo. Rev. Stat. §§ 10-3-1115 and -1116. (Doc. # 5 at 6–11.) American Family removed the case to federal court on October 29, 2021. (Doc. # 1.) On November 19, 2021, American Family filed a single counterclaim, seeking a declaratory judgment that Ms. Olave "was a resident of Missouri on September 15, 2020, and not a resident of Colorado and thus, the [Property] does not meet the definition of Insured location or Residence premises under the policy." (Doc. # 20 at 19.) Plaintiffs moved to dismiss American Family's counterclaim, but on August 11, 2022, the Court adopted and affirmed a Recommendation of United States Magistrate Judge and denied Plaintiffs' Motion to Dismiss. (Doc. # 44.)

On January 30, 2023, Defendant filed the instant Motion for Summary Judgment on all six of Plaintiffs' claims. (Doc. # 55.) Plaintiffs filed their Response (Doc. # 59), and Defendant followed with its Reply (Doc. # 60). The matter is now ripe for review.

## II.     STANDARD OF REVIEW

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it is essential to the proper disposition of the claim under the relevant substantive law. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001). A dispute is "genuine" if the evidence is such

that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee, Okla.*, 119 F.3d 837, 839 (10th Cir. 1997). When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *See id.* However, conclusory statements based merely on conjecture, speculation, or subjective belief do not constitute summary judgment evidence. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact and entitlement to judgment as a matter of law. *Id.* In attempting to meet this standard, a movant who does not bear the ultimate burden of persuasion at trial does not need to disprove the other party's claim; rather, the movant need simply point out to the Court a lack of evidence for the other party on an essential element of that party's claim. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

Once the movant has met its initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Id.* Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler*, 144 F.3d at 671. Stated differently, the party must provide "significantly probative evidence" that would support a verdict in its favor. *Jaramillo v. Adams Cnty. Sch. Dist. 14*, 680 F.3d 1267, 1269 (10th

Cir. 2012). "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler*, 144 F.3d at 671.

### III.  DISCUSSION

American Family seeks summary judgment on all six claims on the basis that Ms. Olave "concealed and/or misrepresented material facts and circumstances related to where she was living, who was living at the [Property], and how often and for what purpose she returned to Colorado in the several years before the loss." (Doc. # 55 at 13–18.) Thus, American Family argues that the Policy was void pursuant to the Concealment of Fraud provision. (*Id.*); *see also* (Doc. # 55-1 at 54.) Plaintiffs disagree, countering that Ms. Olave did not conceal or misrepresent where she was living or who was living at the Property. (Doc. # 59 at 6–10.) Plaintiffs further argue that, even if American Family's arguments are sustained, it waived its rights to void the policy because Ms. Olave informed them of relevant information during the renewal process in 2019 but American Family did not void the policy at that time. (*Id*. at 8–10.)

As described above, the Policy requires Ms. Olave to notify American Family of any changes in ownership, occupancy, or risk, including if the Property was "used for any other purpose other than [her] residence" or if it was "uninhabited." (Doc. # 55-1 at 44.) In Ms. Olave's view, she did not conceal or misrepresent related material information because there was no change—rather, she "consistently stated that she never moved out of the [Property] and still considers it to be her home and primary residence." (Doc. # 59 at 8.) To resolve this dispute then, the Court considers it prudent to assess the words "residence" and "reside"—specifically, whether American Family

has sufficiently shown an absence of a genuine dispute that Ms. Olave did not reside at the Property on the date of the fire.

### A.     RESIDENCE

To the Court's knowledge, Colorado courts have not considered what it means to "reside" at a location in the context of a homeowner's insurance policy. However, there is robust case law which assesses what it means to "reside" at an address in the context of automobile insurance coverage for "resident relatives" or "relatives of the named insured who reside in the same household as the named insured." *See, e.g.*, *Grippin v. State Farm Mut. Auto. Ins. Co.*, 409 P.3d 529, 532–34 (Colo. App. 2016); *Geico Cas. Co. v. Collins*, 371 P.3d 729, 733–37 (Colo. App. 2016), *as modified* (Mar. 24, 2016). The Court finds this case law helpful in the instant context.

"Whether a person is a resident of a household for purposes of insurance coverage is determined by the facts and circumstances of each case." *Collins*, 371 P.3d at 733; *see also Wheeler v. Allstate Ins. Co.*, 814 P.2d 9, 10 (Colo. App. 1991) ("An insurance contract should be construed to carry out the intention of the parties, and that intention should be ascertained, if possible, from the language in the policy alone."). The American Family Policy here defines "Residence premises" as follows:

> a. [**Residence premises**] means the:
>    (1)  One family dwelling **you** own and **you** reside in;
>    (2)  Two family dwelling **you** own and **you** reside in one of the dwelling units; or
>    (3)  Part of any other residence where **you** reside;
>    that is shown as the **residence premises** in the **Declarations**.

(Doc. # 55-1 at 33.) The Policy does not define the term "reside." (*Id.* at 31–34.)

Where an insurance policy does not define the term "reside," Colorado courts consider several factors to determine whether a person is a resident of a household for purposes of insurance coverage. These include: "[1] the subjective or declared intent of the individual, [2] the formality or informality of the relationship between the individual and members of the household, [3] the existence of another place of lodging, and [4] the relative permanence or transient nature of the individual's residence in the household." *Grippin*, 409 P.3d at 532 (citing *Iowa Nat'l Mut. Ins. Co. v. Boatright*, 516 P.2d 439, 440 (Colo. App. 1973)). Courts sometimes refer to these factors as the "*Boatright* factors." *See id.* at 534 n.3; *Collins*, 371 P.3d at 733. No single factor is dispositive, and "[a]ll must be considered in light of the basic consideration of whether the parties to the insurance contract intended that coverage would extend to the alleged insured." *Boatright*, 516 P.2d at 440.

Further, Colorado courts have observed that, under Colorado law, "a person can 'reside' in more than one place," and "a person who has multiple residences may be temporarily living elsewhere." *Grippin*, 409 P.3d at 533. "Residence," Colorado courts have noted, "denotes a place where a person dwells. It 'simply requires bodily presence as an inhabitant in a given place.'" *Potter v. State Farm Mut. Auto. Ins. Co.*, 996 P.2d 781, 783 (Colo. App. 2000) (quoting *Carlson v. Dist. Ct. of Denver*, 180 P.2d. 525, 530 (Colo. 1947)). "Residence" is not synonymous with "domicile" which "requires bodily presence in [a] place coupled with an intention to make it one's permanent home." *Collins*, 371 P.3d at 735 (quoting *Potter*, 996 P.2d at 783).

Neither party briefed the *Boatright* factors. However, the facts upon which a *Boatright* analysis must be based are largely undisputed by the parties. Therefore, the Court analyzes each factor below. *See Potter*, 996 P.2d at 783 (construing the phrase "residents of a household" by considering the *Boatright* factors).

1. <u>Subjective or Declared Intent of the Individual</u>

Ms. Olave has consistently maintained that the Property is her "primary residence," asserting it is "my house where I intend to live." (Doc. # 59-1 at 47); *see also* (Doc. # 55-1 at 81–82, 96–97.) However, Ms. Olave's actions and the undisputed material facts discussed above belie this stated intention. Construing the facts in the light most favorable to Plaintiffs, the Court concludes this factor is at most neutral in determining whether Ms. Olave could be considered a resident of the Property at the time of the fire.

2. <u>The Formality or Informality of the Relationship with Members of the Household</u>

Ms. Olave did not have a formal lease or other agreement with her brother providing him with possessory rights in exchange for rent or other contributions to the Property. (*Id.* at 162, Recorded Statement at 19:04–19:52); *see also Collins*, 371 P.3d at 735. However, Ms. Olave acknowledged that her brother consistently paid the electricity bill and helped financially in other unspecified ways. (Doc. # 55-1 at 162, Recorded Statement at 19:04–19:52.) Given this, and Ms. Olave's admitted failure to spend even one day or night at the Property in 2020, the Court concludes this factor weighs against a finding that Ms. Olave resided at the property at the time of the fire.

       3.       <u>The Existence of Another Place of Lodging</u>

There is no genuine dispute of material fact that Ms. Olave had another place of lodging during the relevant period—namely, the Missouri address she provided to American Family during the 2019 Policy renewal and where she stayed during most of 2019 and all of 2020. Thus, this factor weighs strongly against a finding that Ms. Olave resided at the Property at the time of the fire.

       4.       <u>Relative Permanence or Transient Nature of the Individual's Residence or Household</u>

Multiple undisputed material facts demonstrate that Ms. Olave's "residence" at the Property was highly transient in nature by 2020. It is undisputed that Ms. Olave moved to Missouri in November 2017. (Doc. # 55-1 at 107.) Her daughter, her only school age child, attended school full time in Missouri starting in January 2018. (*Id.* at 114, 170.) Ms. Olave owned her own business which she registered with the Missouri Secretary of State in January 2018. (*Id.* at 161.) In September 2019, Ms. Olave registered to vote in Missouri. (*Id.* at 176.) When she renewed her homeowner's insurance policy, she requested related mail be sent to Missouri. (Doc. # 5 at ¶ 20.) Sometime before November 2020 she allowed her Colorado driver's license to expire and obtained a Missouri license. (Doc. # 55-1 at 162, Recorded Statement at 2:20–3:38, 21:09–24:54, 26:25–27.) In response to American Family's First Set of Interrogatories, Ms. Olave indicated that during the years 2018 and 2019 she traveled to Colorado approximately seven times, although she has not provided any approximate lengths for these visits, and it is undisputed that these trips were not "for work." *Compare* (*Id.* at 114, 170), *with* (*Id.* at 81–82, 93, 96; *id.* at 162, Recorded Statement at 4:35–5:48.) It is

12

also undisputed that in 2019, Ms. Olave spent more time in Missouri than in Colorado, and that she did not spend a single day or night in Colorado in the year 2020, the year of the fire. (*Id.* at 114, 170; *id.* at 162, Recorded Statement at 21:09–24:54, 26:25–27.) Finally, it is undisputed that an American Family investigator found family photographs throughout the Property which did not include Ms. Olave. (*Id.* at 142–43.)

On the other hand, Ms. Olave consistently maintained that the Property was her permanent residence where she intended to live and where at least some of her belongings were kept. (Doc. # 59-1 at 47); *see also* (Doc. # 55-1 at 81–82, 96–97.) She also paid the mortgage, which included the costs of the Policy. (*Id.* at 162, Recorded Statement at 8:53–8:59, 13:22–14:00.)

Construing this evidence in the light most favorable to Ms. Olave, the Court finds that it does not reflect "permanence" at the Property as of the date of the fire. Rather, the evidence demonstrates that Ms. Olave's time in Colorado was relatively transient in 2018 and 2019, and nonexistent in 2020. S*ee Drum v. USAA Gen. Indem. Co.*, No. 21-cv-02422-NYW-SKC, 2023 WL 2375078, at *12 (D. Colo. Mar. 6, 2023) (concluding based on the *Boatright* factors that a plaintiff did not reside at the property at issue).

The Court finds that, considering all the factors, and under the totality of the circumstances based on the undisputed facts, no reasonable juror could conclude that Ms. Olave resided at the Property at the time of the fire.[4] Therefore, Ms. Olave was

---

[4] Pursuant to this analysis and the Policy's definitions of "insured," "household," and "residence premises" (Doc. # 55-1 at 32–33), the Court questions whether Mr. Olave-Hernandez could be considered an "insured" under the policy as his status as an insured appears dependent on Ms. Olave's residence at the Property. *Compare* (Doc. # 5 at ¶ 102), *with* (Doc. # 55-1 at 32–33).

obligated under the Policy to advise American Family of the change in occupancy within 30 days. The Court need not determine the exact date upon which Ms. Olave stopped residing at the Property because the undisputed material facts indicate this change occurred more than 30 days prior to the fire. By failing to provide notice to American Family, Ms. Olave breached her obligations under the insurance contract.[5]

**B.    PLAINTIFFS' CLAIMS**

1.    Claims 1 & 2: Breach of Contract

Having determined that Ms. Olave did not reside at the Property for more than 30 days prior to the date of the fire, and was thereby in breach of her contract with American Family, the Court must now determine if Ms. Olave's actions or statements voided the entirety of the Policy. *See* (Doc. # 55 at 18–20.) Colorado courts have held that the three elements an insurer must prove to demonstrate coverage is void under a fraud clause are "(1) the insured misrepresented or omitted a fact; (2) the misrepresentations or omissions were material; and (3) the insured intended to deceive the insurer." *Wheatridge Office, LLC v. Auto-Owners Ins. Co.*, 578 F. Supp. 3d 1187, 1202 (D. Colo. 2022)

American Family alleges multiple instances of Ms. Olave concealing or misrepresenting material facts relating to her living situation, the individuals residing at the Property, the frequency and purpose of her trips to Colorado, and her ownership of personal property at the Property. (Doc. # 55 at 14–18.) There is no genuine dispute as

---

[5] American Family implies that Ms. Olave's notice failure voided the Policy. (Doc. # 55 at 18.) However, they cite no legal authority for that argument and the Court is not aware of any.

to some of these, such as the contradiction between Mr. Ridulfo's representation that "everything at the [Property] is the property of [Ms. Olave] apart from her brother's clothes," and Mr. Hernandez-Olave's deposition testimony that he owned a number of items at the Property. *Compare* (Doc. # 55-1 at 199), *with* (*id.* at 122–25.) Further, it follows from the Court's conclusion that Ms. Olave did not reside at the Property for more than 30 days prior to the fire, that Ms. Olave also misstated or concealed facts related to her living situation and her time in Colorado during the 2019 Policy renewal and the investigation into the fire.

However, neither party sufficiently briefed whether these misrepresentations void the entire contract. In particular, American Family fails to discuss the intent element outlined above. *Wheatridge Office*, 578 F. Supp. 3d at 1202. Therefore, the Court orders supplemental briefing on this issue. Specifically, the parties should discuss any undisputed material facts which point to Ms. Olave's intention in making the misstatements or concealing the facts discussed above, and/or any case law which may permit the Court to infer an intention based on an insured's actions. The parties may also choose to supplement their briefs on Plaintiffs' argument that American Family waived its right to void the policy by continuing to insure the Property despite the information it learned during the 2019 renewal process. *See* (Doc. # 59 at 8–10.)

The parties also did not brief the issue of how breach by an insured impacts that insured's claim of breach against the insurer. Colorado case law has adopted a notice-prejudice rule which requires that, in order to void the contract, the insurer must demonstrate it was prejudiced by an insured's late notice of a claim. The Court orders

15

supplemental briefing on whether this standard also applies to failure by an insured to provide notice of change in ownership, occupancy, or risk. *See, e.g.*, *Friedland v. Travelers Indem. Co.*, 105 P.3d 639, 643 (Colo. 2005); *Gregory v. Safeco Ins. Co. of Am.*, 514 P.3d 971, 973–76 (Colo. App. 2022) (collecting cases), *cert. granted* 2022 WL 17585951 (Colo. Dec. 12, 2022). If so, then how was American Family prejudiced. The Court reserves ruling on Plaintiffs' Claims 1–2 until such time as this supplemental briefing is completed.

    2.    <u>Claims 3–6: Common-Law Bad Faith and Statutory Unreasonable Denial or Delay</u>

To succeed on a common-law claim for bad-faith denial of an insurance claim, the plaintiff must demonstrate that (1) the insurer's conduct was unreasonable; and (2) the insurer knew or recklessly disregarded the fact that its conduct was unreasonable. *Travelers Ins. Co. v. Savio*, 706 P.2d 1258, 1272 (Colo. 1985). Further, to establish a claim for unreasonable delay or denial of benefits under Colo. Rev. Stat. § 10-3-1115, the plaintiff must prove that "the insurer delayed or denied authorizing payment of a covered benefit without a reasonable basis for that action." Colo. Rev. Stat. § 10-3-1115(2).

"What constitutes reasonableness under the circumstances is ordinarily a question of fact for the jury." *Zolman v. Pinnacol Assurance*, 261 P.3d 490, 497 (Colo. App. 2011). However, where there are no genuine issues of material fact, Courts may determine reasonableness as a matter of law. *Id.* (citing *Bankr. Estate of Morris v. COPIC Ins. Co.*, 192 P.3d 519, 524 (Colo. App. 2008)). Finally, "[u]nder Colorado law, it

is reasonable for an insurer to challenge claims that are 'fairly debatable.'" *Id.* at 496–97 (collecting cases).

The parties did not brief the impact of an insured's breach on these claims, and the Court is not aware of any case law directly discussing failure to notify an insurer of change in occupancy or risk. However, there is case law on other types of breaches by an insured such as in the context of an insured's failure to cooperate. *See, e.g., Polland v. State Farm Mut. Auto. Ins. Co.*, No. 19-cv-01416-KLM, 2019 WL 10258801, at *7–*8 (D. Colo. Oct. 25, 2019). In *Polland*, the court concluded that "[b]ecause Plaintiff's failure to cooperate vitiates his coverage under the insurance policy . . . his bad faith claim therefore fails as a matter of law." *Id.* at *7. The Court finds this reasoning applies in the instant case as well. As discussed above, there is no genuine dispute of material fact that Ms. Olave breached her obligations under the Policy to notify American Family that she no longer resided at the Property. Because Ms. Olave's breach impaired her rights to recover under the Policy, American Family's conduct was reasonable. Therefore, the Court concludes that American Family is entitled to judgment as a matter of law on Plaintiffs' claims 3–6.

## IV.    CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment (Doc. # 55) is GRANTED IN PART and ruling is RESERVED IN PART. As set forth in this order, it is GRANTED with respect to Plaintiffs' Claims 3–6 for Common-Law Bad Faith and Statutory Unreasonable Denial or Delay.

It is FURTHER ORDERED that ruling with respect to Plaintiffs' Claims 1–2 for breach of contract is RESERVED until supplemental briefing on the topics outlined above is completed. American Family's brief is due on or before May 15, 2023. Plaintiffs' response brief is due on or before May 29, 2023. Briefs shall not exceed 10 pages.

DATED:  May 1, 2023

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
Senior United States District Judge