IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Christine M. Arguello

Civil Action No. 21-cv-02908-CMA-MDB

PERLA OLAVE, and
JAMIE DARCI OLAVE-HERNANDEZ,

    Plaintiffs,

v.

AMERICAN FAMILY MUTUAL INSURANCE COMPANY, S.I.,

    Defendant.

## ORDER DENYING PLAINTIFFS' MOTION FOR RECONSIDERATION

This matter is before the Court on Plaintiffs Perla Olave and Jamie Darci Olave-Hernandez's (collectively "Plaintiffs") Motion for Reconsideration Pursuant to Fed. R. Civ. P. 59(e). (Doc. # 75.) For the following reasons, the Court denies the Motion.

### I.    BACKGROUND

The Court incorporates its previous recitation of the background of this case as stated in its Order Granting in Part and Reserving Ruling in Part Defendant's Motion for Summary Judgment (Doc. # 66) and Order Granting Defendant's Motion for Summary Judgment (Doc. # 70).

On May 1, 2023, the Court concluded that Ms. Olave had breached her obligations under her Homeowner's Insurance Policy ('the Policy") by failing to provide notice to Defendant American Family Mutual Insurance Company, S.I.'s ("American

Family") that she no longer resided at the home located on Garfield Street in Thornton, Colorado (the "Property"). (Doc. # 66 at 14.) To reach this conclusion, the Court considered what it means to "reside" at a location in the context of a homeowner's insurance policy, a matter of first impression under Colorado law. (*Id.* at 9.) The Court acknowledged that the Policy does not define "reside," and applied the *Boatright* factors, which Colorado courts use to assess coverage for "resident relatives" or "relatives of the named insured who reside in the same household as the named insured" in the context of automobile insurance. (*Id.* at 9–13 (citing *e.g.*, *Grippin v. State Farm Mut. Auto. Ins. Co.*, 409 P.3d 529, 532–34 (Colo. App. 2016); *Geico Cas. Co. v. Collins*, 371 P.3d 729, 733–37 (Colo. App. 2016), *as modified* (Mar. 24, 2016).) Because the Court concluded that Ms. Olave had breached her notice obligation under the Policy, the Court found American Family's conduct in denying her claim reasonable and granted American Family summary judgment on Plaintiffs' claims for Common-Law Bad Faith and Statutory Unreasonable Denial or Delay. (*Id.* at 16–18.)

However, the Court reserved ruling on Plaintiffs' Breach of Contract claims. The Court determined that there was no genuine dispute of material fact regarding some instances of Ms. Olave concealing or misrepresenting material facts during both the 2019 Policy renewal and the investigation following the September 2020 fire. (*Id.* at 14–15.) Specifically, the Court pointed to statements regarding ownership of items at the Property as well as statements about the purpose of Ms. Olave's trips to Colorado. (*Id.*) However, due to a lack of discussion of relevant issues, the Court ordered the parties to provide supplemental briefing regarding (1) the intent element necessary to establish

whether material misrepresentations by Ms. Olave voided the entirety of the Policy (*id.* at 14–15), and (2) whether Colorado's notice-prejudice rule applies to failure by an insured to provide notice of change in ownership, occupancy, or risk (*id.* at 15–16). The Court also permitted the parties to supplement their briefs on Plaintiffs' argument that American Family waived its right to void the policy by continuing to insure the Property despite the information it learned during the 2019 renewal process. (*Id.* at 15.)

Following supplemental briefing, the Court concluded that "Ms. Olave knowingly and deliberately made material misrepresentations regarding her residence at the Property and her work in Colorado," and therefore, the Court could imply her intent to deceive American Family. (Doc. # 70 at 8–9.) The Court specifically noted (1) its previous conclusion that no reasonable jury could find that Ms. Olave resided at the Property at the time of the fire (*id.* at 8 (citing Doc. # 66 at 13)), and (2) that "Ms. Olave knew she had not worked in Colorado for the three years preceding the fire when she told an American Family representative, during [American Family's investigation into her claim], that she traveled to Colorado for work" (Doc. # 70 at 8 (citing Doc. # 55-1 at 81–82, 93, 96, 114, 170; *id.* at 162, Recorded Statement at 4:35–5:48, 19:56–24:54, 26:25–27:03)).

The Court further found that American Family had not waived its right to void the policy by continuing to insure the Property despite learning during the 2019 renewal process that Ms. Olave was "going back and forth between Missouri for work and Colorado to the house" and that Mr. Olave-Hernandez was living at the Property. (Doc. # 70 at 9 (citing Doc. # 5 at ¶ 20; Doc. # 55-1 at 81–82, 93, 96–97.)) The Court

3

concluded that because Ms. Olave had made material misrepresentations during the 2020 investigation, American Family's 2019 renewal of the Policy did not result in waiver of its rights to void the policy under the fraud clause. (Doc. # 70 at 11 (citing Doc. # 55-1 at 81–82, 93, 96, 114, 170; *id.* at 162, Recorded Statement at 4:35–5:48, 19:56–24:54, 26:25–27:03.)) Based on these conclusions, the Court granted American Family's Motion for Summary Judgment on Plaintiffs' remaining Breach of Contract claims. *See generally* (Doc. # 70.)

On March 16, 2023, Plaintiffs filed the instant Motion for Reconsideration Pursuant to Fed. R. Civ. P. 59(e). (Doc. # 75.) The matter is fully briefed and ripe for review. (Docs. ## 78–79.)

## II. STANDARD OF REVIEW

The Federal Rules of Civil Procedure do not explicitly authorize a motion for reconsideration. However, a litigant subject to an adverse judgment may "file either a motion to alter or amend the judgment pursuant to Fed. R. Civ. P. 59(e) or a motion seeking relief from the judgment pursuant to Fed. R. Civ. P. 60(b)." *Van Skiver v. United States*, 952 F.2d 1241, 1243 (10th Cir. 1991).

A motion to alter or amend the judgment pursuant to Rule 59(e) must be filed within twenty-eight days after the judgment is entered. *See* Fed. R. Civ. P. 59(e); *Banister v. Davis*, 140 S. Ct. 1698, 1703 (2020). The Tenth Circuit recognizes three basic grounds upon which a motion for reconsideration may be granted: "(1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." *Servants of Paraclete v.*

4

*Does*, 204 F.3d 1005, 1012 (10th Cir. 2000). A motion for reconsideration is appropriate to correct clear error or prevent manifest injustice "where the court has misapprehended the facts, a party's position, or the controlling law." *Id.*

The grounds warranting reconsideration are limited and occur only in "exceptional situation[s]." *Proctor & Gamble v. Haugen*, 222 F.3d 1262, 1271 (10th Cir. 2000). A motion for reconsideration is not appropriate to revisit issues already addressed or advance arguments that could have been raised in prior briefing. *See Van Skiver*, 952 F.2d at 1243; *see also Servants of the Paraclete*, 204 F.3d at 1012 ("Absent extraordinary circumstances . . . the basis for the second motion must not have been available at the time the first motion was filed.").

### III.   DISCUSSION

Plaintiffs' instant Motion was filed twenty-eight days after the Court's entry of final judgment for American Family and is therefore timely under Rule 59(e). Plaintiffs do not point to new evidence or changes in relevant law in their Motion. Therefore, their only potential ground for reconsideration is "the need to correct clear error or prevent manifest injustice." *Servants of Paraclete*, 204 F.3d at 1012. However, Plaintiffs' Motion fails to point to such a need. Plaintiffs make four arguments for reconsideration; the Court will address each in turn.[1]

---

[1] Defendants argue that Plaintiffs' first two arguments are improper and should not be considered because Plaintiffs did not previously raise these arguments. (Doc. # 78 at 3 (citing *Exxon Shipping Co. v. Baker*, 554 US 471, 485 (2008).) However, as the Court limited the subjects on which the parties were to provide supplemental briefing (Doc. # 66 at 14–16), this is the first opportunity Plaintiffs had to raise these arguments.

5

A.     **CONTRACT AMBIGUITY**

First, Plaintiffs argue that because the Policy did not define the word "reside" it is ambiguous, and therefore, should have been "construed in favor of providing coverage to the insured." (Doc. # 75 at 4 (citing *Cary v. United of Omaha Life Ins. Co.*, 108 P.3d 288, 290 (Colo. 2005).) The Colorado Supreme Court has explained that "[a]n insurance policy is ambiguous if it is susceptible on its face to more than one reasonable interpretation. *Cary*, 108 P.3d at 290 (citing *Union Ins. Co. v. Houtz*, 883 P.2d 1057, 1061 (Colo. 1994)). However, "a term is not ambiguous merely because it is undefined within the policy if its meaning can be ascertained by looking at the definitions generally accepted by the courts, the industry, and authoritative secondary sources." *Travelers Indem. Co. v. Howard Elec. Co.*, 879 P.2d 431, 434 (Colo. App. 1994). To determine whether a policy contains an ambiguity, it is evaluated "as a whole." *Cary,* 108 P.3d at 290 (citing *State Farm Mut. Auto. Ins. Co. v. Stein*, 940 P.2d 384, 387 (Colo. 1997)).

Plaintiffs have not established the Policy's use of "reside" is ambiguous because, neither in their instant motion nor in their summary judgment briefing, have they presented the Court with more than one reasonable interpretation of the term. In fact, Plaintiffs do not explicitly provide any interpretations of "reside." *See* (Doc. # 59 at 6–8; Doc. # 75 at 4–6.) Rather, Plaintiffs appear to imply that an insured's "opinion" of her residence (Doc. # 75 at 6), or the location which she "considers [] to be her home and primary residence" (Doc. # 59 at 8) should be sufficient to establish an insured's residence. To the extent Plaintiffs offer these as interpretations of "reside," they are not reasonable because they render almost meaningless definitions in the Policy, including

6

"Residence Premises" (Doc. # 55-1 at 33), and "uninhabited" (*id*. at 33), which incorporate the term "reside." Further, such an interpretation would nearly obliterate an insured's obligation to notify an insurer of changes in ownership, occupancy, or risk (*id*. at 44), because the insured could simply state that she still resided at the residence premise "in her opinion."

Further, as stated above, lack of definition in an insurance policy does not create ambiguity if a term's meaning can be ascertained through other sources including case law. *Travelers*, 879 P.2d at 434. This is precisely what the Court did, (Doc. # 66 at 9–13), relying on Colorado's robust case law interpreting what it means for an individual to "reside" at an address in the context of automobile insurance. *See, e.g.*, *Grippin*, 409 P.3d at 532–34; *Collins*, 371 P.3d at 733–37. Plaintiffs take issue with the application of this case law to the Policy because, rather than interpreting "reside" in relation to "Residence Premises," these cases discuss the term "resident relatives" (and other related terms). *Grippin*, 409 P.3d at 532–34; *Collins*, 371 P.3d at 733–37. However, even if Plaintiffs' characterization of the case law were not overly simplistic, this is a distinction without a difference. In each of the cases relied on, the question before the Colorado state court was "whether a person is a resident of a household for purposes of insurance coverage." *Collins*, 371 P.3d at 733; *see also Potter*, 996 P.2d at 783–84; *Drum v. USAA Gen. Indem. Co.*, No. 21-cv-02422-NYW-SKC, 2023 WL 2375078, at *7–12 (D. Colo. Mar. 6, 2023). This was precisely the question before the Court in the instant case. *See* (Doc. # 66 at 8–9.) Therefore, Plaintiffs have not established that it

7

was clearly erroneous or manifestly unjust for the Court to apply the *Boatright* factors to determine Ms. Olave's residence.

Finally, Plaintiffs have not established that application of the *Boatright* factors conflicted with express language in the Policy. (Doc. # 75 at 5–6.) The Policy defined "Residence Premises" as the:

(1) One family dwelling **you** own and **you** reside in;
(2) Two family dwelling **you** own and **you** reside in one of the dwelling units; or
(3) Part of any other residence where **you** reside; that is shown as the **residence premises** in the **Declarations**.

(Doc. # 55-1 at 33.) Taking this definition in isolation (and without its final clause), Plaintiffs argue that the Policy does not exclude the possibility of multiple residences. (Doc. # 75 at 6.) This argument is irrelevant. In its prior Order, the Court acknowledged that Colorado law recognizes the possibility of multiple residences. (Doc. # 66 at 10 (citing *Grippin*, 409 P.3d at 533).) However, Ms. Olave did not have more than one residence at the time of the fire. Under Colorado law, "residence . . . 'requires bodily presence as an inhabitant in a given place.'" *Grippin*, 409 P.3d at 533 (quoting *Carlson v. Dist. Court*, 180 P.2d 525, 530 (Colo. 1947)). It is undisputed that Ms. Olave had not had "bodily presence" in Colorado for at least nine months prior to the fire. (Doc. # 55-1 at 162, Recorded Statement at 21:09–24:54, 26:25–27.) Accordingly, Plaintiffs have failed to establish that the Court clearly erred in its interpretation of "reside" as used in the Policy. (Doc. # 66 at 9–10.)

B.  APPLICATION OF *BOATRIGHT* FACTORS

Second, Plaintiffs argue that even if it was appropriate for the Court to apply the *Boatright* factors to the determination of Ms. Olave's residence, the Court erred by failing to consider facts that would support Ms. Olave's position and to draw all reasonable inferences in Plaintiffs' favor. (Doc. # 75 at 6–8.) Plaintiffs do not specifically note any reasonable inferences the Court failed to draw in their favor. (*Id.*) However, Plaintiffs do note multiple specific supporting facts they allege the Court failed to consider including that (1) Ms. Olave kept all her furnishings and appliances at the Property, (2) that she stayed at the Property on six occasions in 2019, (3) that she did not collect rent from Mr. Olave-Hernandez, and (4) that Ms. Olave paid the mortgage and utilities other than the electricity bill. (*Id.*) Finally, Plaintiffs repeatedly argue that the Court failed to consider that the COVID-19 pandemic restricted Ms. Olave's travel to Colorado. (*Id.*)

First, several of the raised facts—Ms. Olave's pre-2020 visits to the Property, and her payment of the mortgage—were considered by the Court even if they were not listed in the analysis of each *Boatright* factor. *See* (Doc. # 66 at 3, 4 n.3, 5, 11.) The remainder of the facts cited by Plaintiffs were not expressly stated in the summary judgment briefing. Although American Family noted that Ms. Olave "submitted an affidavit asserting she owned all [the Property's] contents but for her brothers' clothes" (Doc. # 55 at 11); *see also* (*id.* at 9), facts relating to where Ms. Olave stored furniture, appliances, or other personal property, the collection of rent, and the payment of utilities do not appear in the summary judgment briefing. *See* (id. at 11; Doc. # 59 at 3–4; Doc.

9

# 60 at 3–5.) Plaintiffs did not include any additional facts in their Response (Doc. # 59) to American Family's Motion despite the Court's Practice Standards providing instructions for how to do so. Civ. Practice Standard 7.1D(b)(5). Plaintiffs cannot now claim error by the Court when they failed to raise and provide evidence in support of allegedly favorable facts.

Finally, the Court did acknowledge the impact of the global COVID-19 pandemic. (Doc. # 66 at 4.) However, the pandemic did not excuse Ms. Olave from notifying American Family of her change in residence. The Policy required Ms. Olave to notify American Family of changes in ownership, occupancy, or risk within 30 days. (Doc. # 55-1 at 44.) At the time of the September 15, 2020 fire, Ms. Olave had spent more than 250 consecutive days away from the Property. (Doc. # 55-1 at 162, Recorded Statement at 21:09–24:54, 26:25–27); *see also* (Doc. # 5 at ¶ 8.) By almost all reasonable indicators of residency, including registering a business, enrolling her daughter in school, registering to vote, obtaining a driver's license, and "bodily presence," Ms. Olave had established residence in Missouri months or years before. (Doc. # 55-1 at 161, 107, 170, 176; *id*. at 162, Recorded Statement at 2:20–3:38.) Whether it was by choice or not, Ms. Olave had not resided at the Property for more than 30 days prior to fire and her failure to notify American Family of that change put her in breach of the Policy.

**C.    THE COURT'S RELIANCE ON FACTS**

Next, Plaintiffs argue that the Court inappropriately relied on disputed facts in concluding Ms. Olave had made material misrepresentations sufficient to void the Policy

pursuant to the fraud clause. Specifically, Plaintiffs refer to the Court's summary of Ms. Olave's 2019 Policy renewal process (Doc. # 66 at 4; Doc. # 70 at 2), which Plaintiffs argue they disputed in their Response to the Motion for Summary Judgment. (Doc. # 75 at 9 (citing Doc. # 59 at 3.))

First, as it related to the 2019 renewal process, Plaintiffs only disputed that Ms. Olave "rejected" the offered businessowner's policy, stating rather, that she did not see it until after her homeowner's policy renewed. (*Id*.) The Court was careful in its Order to note that, "[a]ccording to the agent" Ms. Olave declined to change the type of policy covering the Property because she was traveling back and forth between Colorado and Missouri. (Doc. # 66 at 4.) Contrary to Ms. Olave's assertions, the Court did not "adopt" this language. (Doc. # 75 at 10.)

More importantly, however, the Court did not rely on this disputed fact in concluding either (1) that Ms. Olave made material misrepresentations of fact regarding her residence at the Property and her work in Colorado, or (2) that Ms. Olave made these misrepresentations knowingly and deliberately. (Doc. # 66 at 14–15; Doc. # 70 at 8–9.) In its Order Granting in Part and Reserving Ruling in Part Defendant's Motion for Summary Judgment, the Court noted a lack of dispute regarding the (1) misrepresentations by Ms. Olave's public adjustor, Peter Ridulfo, concerning ownership of personal items at the Property, and (2) Ms. Olave's "living situation and her time in Colorado during the 2019 Policy renewal and the investigation into the fire." (Doc. # 66 at 14–15.) In determining these misstatements were knowingly and deliberately made, the Court relied exclusively on the undisputed facts that (1) "Ms. Olave's residence in

11

Missouri was not temporary or transient"; (2) "[d]espite a lack of a formal rental agreement, Mr. Olave-Hernandez occupied the Property for over two years prior to the fire and consistently paid the electricity bill as well as providing other unspecified financial assistance"; and (3) "Ms. Olave knew she had not worked in Colorado for the three years preceding the fire when she told an American Family representative, during a recorded statement, that she traveled to Colorado for work." (Doc. # 70 at 8.) Because the Court's holding did not rely on the disputed fact of why Ms. Olave maintained a homeowner's—rather than a businessowner's—insurance policy, Plaintiffs have not demonstrated the Court erred or misapprehended the facts.

D.     **MATERIALITY OF MISREPRESENTATIONS**

Finally, Plaintiffs argue that the misrepresentations relied upon by the Court in concluding the Policy was void did not meet the legal definition of material misrepresentations. (Doc. # 75 at 10–11.) However, Plaintiffs misstate the law. Plaintiffs state that "[a]n insurer may avoid coverage **only** if 'the false statement of fact or the concealed fact materially affected either the acceptance of the risk or the hazard assumed by the insurer.'" (*Id.* at 11 (citing *Peterson v. USAA Life Ins. Co.*, 353 F. Supp. 3d 1099, 1109 (D. Colo. 2018) (emphasis added).) However, as American Family points out (Doc. # 78 at 6), misstatements made by an insured during the course of an investigation "will be considered material if a reasonable insurance company, in determining its course of action, would attach importance to the fact misrepresented." *Wagnon v. State Farm Fire & Cas. Co.*, 146 F.3d 764, 768 (10th Cir. 1998) (quoting *Long v. Insurance Co. of N. Am.* 670 F.2d 930, 934 (10th Cir. 1982)).

12

As discussed above, in concluding Ms. Olave had made material misrepresentations of fact, the Court relied on (1) Mr. Ridulfo's statements that Ms. Olave owned everything at the Property but for her brother's clothing, and (2) Ms. Olave's representations during the investigation regarding the purpose of her trips to Colorado. (Doc. # 66 at 14–15.) The Court believes a reasonable insurance company would attach importance to these facts in deciding its course of conduct and Plaintiffs have made no arguments addressing this standard. Therefore, the Court concludes that Plaintiffs have not established the Court's conclusion that these misrepresentations were material was clearly erroneous, manifestly unjust, or the result of the Court's misapprehension of the facts.

## IV.     **CONCLUSION**

For the foregoing reasons, Plaintiffs Perla Olave and Jamie Darci Olave-Hernandez's Motion for Reconsideration Pursuant to Fed. R. Civ. P. 59(e) (Doc. # 75) is DENIED.

DATED: September 21, 2023

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
Senior United States District Judge